UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| FRANCISCO B. BURILA, JR. | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil No. |
| | ) |
| CIGNA LIFE INSURANCE COMPANY | ) |
| OF NORTH AMERICA | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT**

NATURE OF THE ACTION

This is an action brought under the Employment Retirement Income and Security Act ("ERISA"), 29 U.S.C. §1132, to secure long term disability (hereinafter "LTD") benefits wrongfully withheld from Plaintiff Francisco Burila by Defendant Cigna Life Insurance Company of North America.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451 and 1331. This action is authorized and instituted pursuant to Section 1132 of ERISA, 29 U.S.C. §1001 *et seq.*

2. The breach of the plans and insurance policies in question was and is now being committed within the jurisdiction of the United States District Court for the District of Maine.

PARTIES

3. Plaintiff Francisco Burila is a resident of the Town of Topsham, County of Sagadahoc, State of Maine. For approximately 34 years, until November 2017

when he became disabled from working, Plaintiff was employed by Veritiv Corporation (and its predecessors) in Maine. Veritiv Corporation provided for employees an insured group LTD plan originally underwritten by Defendant Cigna Life Insurance Company of North America. He is authorized to bring this action by Section 1132 of ERISA, 29 U.S.C. §1001 *et seq.*

4. Upon information and belief, Defendant Cigna Life Insurance Company of North America (hereinafter "Cigna"), is a for-profit disability insurer, authorized to do business in the State of Maine, with headquarters in Bloomfield, Connecticut, and has been during the Plaintiff's benefit claim period the underwriter for the LTD plan for policyholder Vertiv Corporation.

## EXHAUSTION OF INTERNAL APPEALS

5. Cigna's letter denying LTD benefits dated October 11, 2021, states that its decision is "final" and that Plaintiff has "exhausted all administrative levels of appeal and no further appeals will be considered," and notifies him of his right to pursue a civil action under Section 502(a) of ERISA.

6. Plaintiff has exhausted all internal appeals as required by Cigna's LTD plan.

## FACTS

7. Plaintiff Francisco Burila is 57 years old and has a strong work history as a full-time tractor trailer truck driver for the same company for 34 years. Over his years there, the company changed ownership and names; the name of the company when Mr. Burila last worked there was Veritiv Corporation.

8. As a Full-Time Active Employee, as defined in Cigna's Schedule of Insurance, Mr. Burila was a covered beneficiary of the LTD policy number FLK-0908183, which was underwritten during his claim period by Cigna.

9. In November 2017, Mr. Burila's wife took him to the emergency room at Mid Coast Hospital in Maine after she noted unusual symptoms including progressive difficulty awakening, progressive confusion with significant decrease in ability to process simple tasks, personality changes, and a fever.

10. At the hospital, Mr. Burila suffered a witnessed generalized tonic-clonic ("GTC") grand mal seizure and he was transferred via Life Flight to Massachusetts General Hospital ("MGH"), admitted to the Neuro ICU and then transferred to the neurology floor in the Wang Building.

11. At MGH, Mr. Burila was diagnosed with encephalopathy, likely caused by viral encephalitis and a notable history of at least three lifetime concussions with loss of consciousness.

12. Following discharge as an in-patient at MGH for approximately one week, Mr. Burila received in-home care services from CHANS Home Health & Hospice ("CHANS") including Occupational Therapy, Speech Language Pathology and Skilled Nursing. He was also advised not to drive for 6 months due to his seizure.

13. Mr. Burila's Speech Language Pathology services included being followed by a Speech Therapist for "cognitive-communication skills with a focus on word retrieval, auditory processing and organization of spoken narratives."

14. In or around January 2018, Mr. Burila was discharged from CHANS and referred to outpatient speech therapy services.

15. On discharge, it was noted that while Mr. Burila "demonstrated excellent effort and had a very supportive wife," he "continues to demonstrate residual effects."

16. In follow-up appointments at the neurology clinic on January 16, 2018, and again in May 2018, treating neurologist Sarah Conway, M.D., said claimant was not yet at his cognitive baseline, and he had continued impaired short-term memory and word-finding difficulties.

17. Since 2018, Mr. Burila has continued to need and receive a variety of outpatient services for these residual cognitive effects to the present day. Specifically:

    a. He is being treated by a team of providers from MGH, including a neurologist, a psychiatrist and a speech-language pathologist; and

    b. He is also followed by his long-time primary care provider, Jennifer Riehl, M.D.

18. As reflected in his medical records, Mr. Burila has had on-going impaired cognition impacting his memory and causing fatigue, as well as difficulty with word finding and concentration and he continues to be in treatment for these issues.

19. In a letter dated April 22, 2020, Dr. Conway wrote: "In November 2017, Francisco [Burila] developed changes and disorientation. He subsequently had a generalized tonic clonic seizure and a febrile illness. Since that time, he has had persistent difficulty with short-term memory, calculations, and word finding. He struggles with concentration and has had difficulties with fine motor tasks. On formal cognitive examinations with the Montreal Cognitive Assessment, he demonstrated difficulties in attention, language, and short term memory. In

addition, he has had prior concussions which have led to further difficulties with concentration and cause him to fatigue easily. Because of his concussions, and cognitive changes from his seizure and febrile illness, he is unable to work a job that entails a 40 hour a week commitment even if it is a desk job."

20. In a letter dated April 20, 2021, Dr. Riehl wrote: "I do not believe Mr. Burila currently has work capacity even for a simple sedentary job. He was hospitalized in November 2017 with encephalopathy and an isolated seizure. Since that event he has had ongoing memory impairment, cognitive deficiencies and word finding difficulties. He has demonstrated inability to follow directions for his medications and his wife needs to accompany him to all his appointments and manage his medications at home. He has been unable to complete paperwork, follow through with plans or complete tasks such as mowing the lawn. He is being treated by Neurology at Massachusetts General Hospital regarding these impairments and is undergoing cognitive rehabilitation currently. I do not believe he can work due to inability to follow directions, learn new tasks, and sustain attention long enough to complete tasks."

21. In a letter issued on April 27, 2021, Mr. Burila's speech language pathologist, Jennifer Freeburn, MS CCC-SLP, who specializes in the diagnosis and treatment of acquired neurogenic cognitive communication disorders, wrote that Mr. Burila was referred to her by Dr. Christina Kay, PhD of the MGH Psychological Assessment Center, and she noted that Dr. Kay's "extensive testing demonstrated Mr. Burila's persistent deficits in processing speed, verbal language efficiency,

and memory encoding in the setting of seizure and encephalopathy with initial onset in November 2017."

22. In her April 27, 2021 letter, Ms. Freeburn wrote that, "In his daily life, Mr. Burila also struggles with executive functioning deficits primarily in the areas of initiation, inhibition, and information synthesis that further limit his participation in managing complex tasks independently. Mr. Burila presents with concomitant fatigue and depressive symptoms, both of which contribute to cognitive symptoms and limit his activity levels." She opined that Mr. Burila's "reduced cognitive stamina and previously described domain-specific deficits would limit his capacity to participate in vocational activities at this time."

23. Dr. Kay's August 31, 2020 examination noted, among other things, that:

   a. On testing relating to attention and executive function, Mr. Burila exhibited "difficulty on word generation tasks";

   b. On testing relating to language, "he exhibited significantly reduced efficiency in word retrieval"; and

   c. On testing relating to memory and learning, she wrote that these "functions were variable with performances notable for reduced learning efficiency and retrieval based difficulty on a list-learning task" and that "[d]elayed recall was exceptionally low."

24. Dr. Kay's August 31, 2020 examination concluded that Mr. Burila's "current neuropsychological profile is characterized by mild disruption within frontotemporal systems, evidenced by reduced efficiency in word-retrieval and new learning. Memory consolidation appears solid, though he exhibits mild

retrieval-based difficulties for unstructured, complex information. From a diagnostic perspective, he meets criteria for a mild neurocognitive disorder and reactive depression. Given the time course of his reported symptoms, etiology of his cognitive difficulties is likely related to cognitive sequelae from the GTC and encephalopathy in November 2017, as well as possible cumulative effects from multiple lifetime concussions with LOC. Additional salient contributing factors include depressive symptoms, increased stress, fatigue, and vascular risk factors… all of which can interfere with cognitive efficiency. Notably, his cognitive symptoms, fatigue, and depression appear to be mutually exacerbating."

25. Even though Dr. Kay's August 31, 2020 report characterizes Mr. Burila's diagnosis as "mild," she recommended cognitive rehabilitation treatment with Jennifer Freeburn to help with "word retrieval and learning efficiency" and Ms. Freeburn interpreted Dr. Kay's findings to be consistent with a substantial impairment that significantly impacts Mr. Burila's daily life functioning and abilities.

26. On or about May 21, 2021, Dr. Marina Avetisyan, M.D. PhD (MGH Neurology Resident Physician), who is a member of Mr. Burila's current neurology team at MGH (along with Dr. Christina Kay, PhD of MGH Neuropsychology and Jennifer Freeburn, MS, CCC-SLP of MGH Speech Language Pathology), completed a residual functional capacity form ("RFC") and wrote that Mr. Burila is "substantially impaired" in his ability to maintain concentration for extended periods.

27. Dr. Avetisyan also wrote on the May 21, 2021 RFC that Mr. Burila is "moderately impaired" in the following areas: ability to remember and follow general procedures; ability to understand, remember and carry out specific instructions; ability to perform activities within a schedule and be punctual; ability to sustain a routine without supervision; ability to make decisions; ability to maintain productivity/sustain activity; ability to respond appropriately to changes in work setting; ability to be aware of hazards and take precautions; ability to travel in unfamiliar places or use public transportation; ability to set realistic goals or make plans independently.

28. In the May 21, 2021 RFC, Dr. Avetisyan opined that Mr. Burila's "reduced cognitive stamina and previously described domain-specific deficits would limit his capacity to participate in vocational activities at this time."

29. In a letter dated July 13, 2021, Dr. Avetisyan wrote: "This letter is to confirm that Francisco B. Burila, Jr. is **medically unable to work an 8 hours/day 40 hours/week work week** due to cognitive disabilities that are the sequelae of his prior seizures, encephalopathy, and traumatic brain injuries." (Emphasis in original.)

30. The objective medical record reflects ongoing speech/language, occupational and physical therapy, and objective medical signs and diagnostic testing that document ongoing work-related limitations that interfere with Mr. Burila's ability to engage in sustained concentration, persistence and pace necessary for full-time work.

31. In addition, Mr. Burila's spouse of 28 years provided a sworn declaration to Cigna describing her husband's condition as she personally observes it on a daily basis, stating in part that:

    a. he has difficulty concentrating on doing basic things he used to enjoy like puzzles;

    b. he becomes exhausted when doing anything that requires him to think or concentrate and takes daytime naps to recover from attempting basic activities;

    c. he has problems with word finding that interferes with his ability to make appointments, order food in a restaurant or interact with a sales person in a store;

    d. his health care providers will not meet with him without his wife present because he is unable to communicate with them effectively—they do not understand him and cannot get information about his health, and he does not process or recall information they provide him;

    e. he misses cues that would prompt him to be on time or communicate that he will be late;

    f. he cannot perform tasks beyond one step at a time without help;

    g. he is very easily distracted and loses focus on basic tasks further needing someone to prompt him step by step;

    h. he needs assistance in taking the correct medication and the right times;

    i. he is unable to follow a map app or make quick decisions required when driving (outside of regular routes he used to drive routinely as a truck

    driver before the seizure) and he cannot follow more than step-by-step instructions or drive more than 30-60 minutes without becoming exhausted; and

    j.  he can no longer think strategically for basic living skills such as appointment scheduling, meal planning, paying bills, budgeting, or setting a reasonable order for running errands.

32. On or about May 26, 2018, Cigna granted Mr. Burila's request for LTD benefits.

33. On or about May 22, 2020, the Social Security Administration ("SSA") granted Mr. Burila disability benefits with May 1, 2018, as the date of entitlement.

34. The SSA relied in part on an impartial vocational expert, Jane Hall, who testified at the SSA hearing that there are no jobs in the national economy that Mr. Burila could perform based on his age, education, work experience, and residual functional capacity.

35. Mr. Burila's LTD payments were substantially offset (reduced from $2,463 to $475 per month), by the monthly benefits payments from SSA.

36. Cigna sent Mr. Burila for an "independent medical examination" ("IME") on July 24, 2020, with George B. Neal, who concluded that Mr. Burila was not "physically functionally impaired" and he completed a "Physical Ability Assessment" that measured no cognitive functions or stamina.

37. Dr. Neal initially insisted that he meet with Mr. Burila alone for the IME, however, shortly into their meeting, Dr. Neal requested Mr. Burila's wife come into the examination room as Dr. Neal said he was unable to get a medical history from Mr. Burila regarding what had happened during the seizure and medical

stay, nor could he understand what Mr. Burila was trying to explain regarding his day-to-day activities.

38. Dr. Neal's report regarding Mr. Burila implies that Mr. Burila provided more information about his medical history and symptoms than he actually did and it fails to note Mr. Burila's clear cognitive deficiencies personally witnessed by Dr. Neal that are consistent with the medical records and opinions from Mr. Burila's health care providers.

39. Dr. Neal's IME report opinion relied upon his gross misstatement that Mr. Burila's primary care provider, Dr. Riehl, said Mr. Burila was "fully recovered," which he took out of context and was clarified by Dr. Riehl in her April 28, 2021 letter, in which she says her statement that Mr. Burila "appears to have recovered" in fact "referred to the viral encephalitis, not his seizure disorder and cognitive impairment, which he has not recovered from."

40. Dr. Neal's IME report also inappropriately placed substantial weight on a note from Mid Coast Rehabilitation dated July 30, 2018, which he says "reported that all [Mr. Burila's] test results were above average for his age group," while discounting without explanation the more recent April 2020 opinion of Mr. Burila's treating neurologist, Dr. Conway, in which she opines based on her formal cognitive examination with the Montreal Cognitive Assessment, that Mr. Burila demonstrated difficulties in attention, language and short-term memory.

41. Dr. Neal's IME report suggests he reviewed Mr. Burila's medical records only through November 2018, even though he examined Mr. Burila on July 24, 2020.

42. Dr. Neal's IME report disregarded Mr. Burila's substantial cognitive fatigue, which is one of the chief symptoms impacting Mr. Burila's ability to work – and which was noted in Dr. Kay's report as one of the 3 critical elements in the symptoms Mr. Burila is experiencing.

43. On or about November 5, 2020, relying substantially on Dr. Neal's IME report, Cigna wrote Mr. Burila a letter with its determination that as of May 26, 2020, he was no longer eligible for LTD benefits because that is the date when the policy's definition of disability changed and there was insufficient evidence that he was "unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience." Cigna provided no explanation or consideration for the fact that all of Mr. Burila's providers indicate he lacks the concentration and stamina, among other cognitive deficits, to successfully reenter the workforce.

44. Mr. Burila appealed the denial and Cigna issued a second denial letter dated June 14, 2021, stating that Mr. Burila could perform "Dispatcher, Maintenance Service" and "Industrial-Order Clerk" positions at $30,500 per year and $33,910 per year respectively.

45. Mr. Burila would have to work full-time as a Dispatcher Maintenance Service or Industrial Order Clerk to earn at least 60% of his Indexed Earnings under Cigna's Plan.

46. Cigna's June 14, 2021 letter also determined that Mr. Burila "is able to perform their own occupation. . . ." Cigna's letter provided no basis to support that Mr. Burila is able to work in his "own occupation" as a truck driver. Cigna's letter

provided no explanation or consideration for the fact that all of Mr. Burila's providers indicate he lacks the concentration and stamina, among other cognitive deficits, to successfully reenter the workforce.

47. Cigna issued a third denial letter dated September 23, 2021, reiterating almost verbatim everything from its June 14, 2021 denial letter except one paragraph, which provided that it had its peer reviewers consider records dated July 13, 2021, from Dr. Kastin and certain speech therapy records.

48. The September 23, 2021 denial letter states "the evidence did not support the presence of ongoing functional impairment beyond August 18, 2020" and determines Mr. Burila could perform "Dispatcher, Maintenance Service" and "Industrial Order Clerk" positions as it stated in its June 14, 2021 letter.

49. Cigna's peer reviewers performed no physical evaluation of Mr. Burila and based their conclusions on incomplete medical records and information.

50. Cigna's September 23, 2021 denial letter failed to mention critical documents submitted by Mr. Burila in support of his internal appeal, including the Residual Functional Capacity form dated May 21, 2021, completed by Dr. Marina Avetisyan, M.D. PhD (MGB Neurology Resident Physician), who is a member of Mr. Burila's current neurology team at MGH (along with Dr. Christina Kay, PhD of MGH Neuropsychology and Jennifer Freeburn, MS, CCC-SLP of MGH Speech Language Pathology), which notes that he is "substantially impaired" in his ability to maintain concentration for extended periods, and "moderately impaired" in 10 other cognitive areas, and is that his "reduced cognitive stamina

and previously described domain-specific deficits would limit his capacity to participate in vocational activities at this time."

51. Cigna's September 23, 2021 letter set September 24, 2021 (the date Cigna mailed the letter) as the deadline for Mr. Burila to respond, a deadline that was objectively impossible to meet because his counsel did not even receive the letter until September 30, 2021.

52. On October 11, 2021, Cigna issued its final denial letter in which it falsely states Mr. Burila was given until October 7, 2021, to respond to its September 23, 2021 letter.

53. Cigna's October 11, 2021 letter reiterated almost verbatim what was in Cigna's September 23, 2021 letter.

54. Upon information and belief, Cigna retained biased medical reviewers.

55. During its review of the appeal, Cigna relied on medical file reviews which contradict the findings of direct care physicians without the benefit of a physical examination.

56. Upon information and belief, Cigna withheld information from its peer reviewers, including medical records from Mr. Burila's neurology treaters at MGH, as well as the availability of Mr. Burila's treaters to provide additional information through written questions.

57. Cigna did not share medical and functional capacity reports based on examination of Mr. Burila with a vocational counselor for a determination of his capacity for working in any occupation.

58. Cigna did not request an in-person functional capacity examination.

59. Upon information and belief, Cigna served in the dual role of adjudicator and payor of the LTD benefits claimed herein.

60. Cigna did not afford Mr. Burila with a full and fair review.

61. Examples of indicators that Cigna did not afford Mr. Burila a full and fair review include:

    a. In making its decision to deny Mr. Burila continued LTD benefits, Cigna relied on the fact that Mr. Burila's providers did not return Cigna's telephone calls despite Cigna's agreement that any follow up questions for Mr. Burila's providers would be provided in writing through Mr. Burila's attorney;

    b. On September 24, 2021, Cigna mailed a letter to Mr. Burila's counsel dated September 23, 2021, which stated his claim was going to be denied and his deadline to provide additional information was September 24, 2021 (the day Cigna sent the letter and well before Mr. Burila's counsel received the letter);

    c. Cigna's October 11, 2021 denial letter falsely states that its September 23, 2021 letter gave Mr. Burila until October 7, 2021, to provide additional information (not September 24, 2021, as stated in its September 23, 2021 letter);

    d. Cigna initially withheld documents from Mr. Burila and his counsel that were contained in its file, including the Independent Medical Exam report conducted by Dr. George Neal on July 24, 2020, and the Neuropsychological Evaluation conducted by Clinical Neuropsychologist

    Christina Kay dated August 31, 2020, upon which Cigna relied in its appeal denial letter;

  e. Cigna refused to allow time to obtain Mr. Burila's full SSA file before reaching its determination to deny Mr. Burila's benefits knowing that SSA issued a decision favorable to Mr. Burila.

62. For all relevant periods the Plaintiff has been disabled in accordance with Cigna's LTD plan's definition and entitled to long term disability benefits.

COUNT I

63. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 62 above as if fully set forth herein.

64. At the time Plaintiff became eligible for the LTD benefits at issue herein, Plaintiff's employer had incorporated into its employee benefit package an LTD benefit plan with Cigna ("the Plan") within the meaning of ERISA, 29 U.S.C. §1002(1)(A).

65. After 24 months, the Plan defines "Disabled" apply where Plaintiff, "solely due to Injury or Sickness . . . is 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and 2. unable to earn 60% or more of his or her Indexed Earnings."

66. The Plaintiff's medical evidence regarding the extent of his disability and his functional limitations compel a finding that he has been continuously disabled in accordance with Cigna's Plan definition of "Disabled" at all relevant times since his onset of disability in November 2017.

67. Cigna denied LTD benefits despite the fact that Mr. Burila was and remains disabled and eligible for benefits in accordance with the policy.

68. Cigna misconstrued medical reports and functional capacity reports; failed to evaluate and consider the totality of the Plaintiff's symptoms and work limits which cumulatively disable him; failed to perform a vocational analysis as to his ability to perform the main duties of her full time job; and failed to credit the opinion of his direct care medical provider or the sworn declaration of Plaintiff's spouse of 28 years, describing Plaintiff's inability to work 8 hours per day in any job due to debilitating lack of sustained concentration, inability to exercise judgment, inability to drive except in familiar areas, inability to recall words and remember tasks, and extreme fatigue after only a couple of hours of tasks requiring concentration such as attending medical appointments and attending speech therapy sessions.

69. Cigna failed to afford Plaintiff with a full and fair review, and its denial of LTD benefits is unreasonable and not based on substantial evidence.

70. The Plaintiff provided Cigna with substantial evidence that he met the Plan's definition of disability and requested review of his denial of benefits in accordance with the plan appeal procedures.

71. Cigna retained biased medical file reviewers who selected facts from the medical record to support their opinions on work capacity and failed to review or ignored the facts established by Mr. Burila's spouse of 28 years, Mr. Burila's team at Massachusetts General Neurology, and his direct primary care provider, who has

personally observed his difficulties in even managing his own medical appointments due to the cognitive symptoms he continues to experience.

72. The claim denial was erroneous as will be demonstrated by a *de novo* review.

73. In the alternative, Cigna's denial of the Plaintiff's claim for LTD benefits was unreasonable, arbitrary and capricious, and an abuse of discretion.

74. Cigna's denial is based on factors that come from an actual and/or structural conflict of interest.

75. The Plaintiff is entitled to LTD benefits, reimbursement for benefits due and not paid, interest, costs and attorney fees pursuant to 29 U.S.C. § 1132(a)(1)(B) & (g)(1).

WHEREFORE, Plaintiff Francisco Burila requests that the Court review the complete record and additional evidence generated by conflict of interest discovery for the Plaintiff's LTD claim and upon review render judgment against the Defendant Cigna for damages in an amount determined to be reasonable, plus equitable relief in the form of this Court's ordering that the Plaintiff is entitled to LTD benefits, interest, costs, attorney fees, and such further relief as the Court deems just and proper.

DATED:   November 23, 2021   Respectfully submitted,

　　　　　　　　　　　　　　　　　　　/s/ Maria Fox
　　　　　　　　　　　　　　　　　　Maria Fox – Bar No. 9957
　　　　　　　　　　　　　　　　　　Counsel for Plaintiff